IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICK COLEMAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOUIS FOLINO | : | NO. 14-1683 |

MEMORANDUM

Dalzell, J.                                                                    October 21, 2015

## I.      __Introduction__

We consider here petitioner's objections (docket entry # 20) to the Report and Recommendation issued by the Honorable Timothy R. Rice ("R & R").

Patrick Coleman ("Coleman") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 against Louis Folino, the Superintendent of the State Correctional Institution at Greene.  Coleman now objects to the R & R, claiming that Judge Rice erred when he failed to excuse Coleman's untimeliness under the Fundamental Miscarriage of Justice Exception ("FMJE") and when he stated that Coleman cannot establish equitable tolling.  Coleman further requests an evidentiary hearing to develop facts in support of equitable tolling or , alternatively, that we grant a certificate of appealability ("COA") even if we approve and adopt Judge Rice's R & R.

For the reasons set forth below, we will overrule Coleman's objections to Judge Rice's R & R and deny Coleman's request for an evidentiary hearing.  We will, however, grant Coleman a COA limited to the FMJE question.

**II.**     **Standard of Review**

Coleman objected to the R & R pursuant to Local R. Civ. P. 72.1 IV(b) which provides that "[a]ny party may object to a magistrate judge's proposed findings, recommendations or report under 28 U.S.C. 636(b)(1)(B) … within fourteen (14) days after being served with a copy thereof" by filing "written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."  We make de novo determinations on those portions of the Report or specified proposed findings or recommendations to which Coleman objects. See 28 U.S.C. § 636.  The standards from the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") govern our de novo review.  AEDPA permits those in state custody to file a petition seeking a writ of habeas corpus in federal court, 28 U.S.C. § 2254(a), but mandates great deference to state courts' factual findings and legal determinations. See Woodford v. Viscotti, 537 U.S. 19, 24 (2002) (explaining Section 2254(d)'s highly deferential standard for evaluating state court rulings); see also Werts v. Vaughn, 228 F.3d 178, 196 (3d Cir. 2000) (explaining that AEDPA increased the deference federal courts must give to state courts' factual findings and legal determinations).

**III.**     **Factual and Procedural History**

We recite the facts and procedural history as evidenced by the record and Judge Rice's R & R.[1]  Coleman was convicted of first-degree murder, two counts of aggravated assault, and one count each of criminal conspiracy and possession of an instrument of a crime in December of 2011 for his involvement in a shooting at Tobin's Inn Restaurant that occurred on August 10, 1989.  R & R at 1.  Coleman's conviction came after a 28-day trial where Coleman was tried with several other defendants and where the Commonwealth called seventy-six (76) witnesses.

---

[1] We may properly reference Judge Rice's factual and procedural history because Coleman did not object to this portion of the R & R.

Petition at 2 and Obj. at 1.  Only one of the seventy-six witnesses testified to Coleman's involvement in the shooting. Petition at 14.

Coleman was joined with the other defendants in this trial because he was charged with violating the Pennsylvania Corrupt Organizations Act ("PCOA"),18 Pa. C.S. § 991, on allegations that he served in co-defendant John Craig Haynes's gang.  Id. at 2-3.  Most of the testimony at trial focused on the gang's involvement in the drug trade and its many acts of violence.  Id. at 5-15.[2]  While Coleman was convicted of the aforementioned murder, assault, conspiracy, and possession charges, he was acquitted of violating the PCOA.  R & R at 1. Coleman argued in post-verdict motions that his joinder was inappropriate, but the trial court explained in an opinion addressing these motions that his joinder was appropriate under Pennsylvania law because the defendants were charged with conspiracy to commit murder.  Id. Coleman appealed to the Superior Court, arguing that (1) his trial had been improperly joined with his co-defendants, (2) evidence against his co-defendants had been improperly admitted against him, and (3) the prosecutor committed misconduct by commenting about "other crimes" evidence that implicated only his co-defendants.  Id. at 2.  The Superior Court affirmed his judgment of sentence and Coleman did not seek further review.  Id.

The Pennsylvania Supreme Court later held in Commonwealth v. Besch, 674 A.2d 655 (Pa. 1996), that the PCOA did not apply to an individual's participation in a wholly illegitimate enterprise, such as the drug gang in Coleman's case.  Coleman took no action following the Besch decision.  In 2002, Coleman filed a pro se petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. § 9541, et seq. ("PCRA"), seeking reinstatement of his appellate rights based on ineffective assistance of counsel.  R & R at 2.  Coleman alleged that his appellate

---

[2] To his great credit, in his petition for a writ of habeas corpus Coleman painstakingly details the vast amount of testimony during his trial.

attorney had agreed to appeal his conviction to the Pennsylvania Supreme Court and then failed to do so.  Id.  Coleman's newly-appointed PCRA attorney filed a no-merit letter stating that Coleman's claim was untimely and that Coleman could not show that the Pennsylvania Supreme Court would have entertained his appeal even if it had been timely filed.  Id.  The PCRA Court denied Coleman's petition as frivolous and the Superior Court affirmed this decision in March of 2004.  Id. at 3.

Coleman filed a second, counseled PCRA petition in June of 2007, again claiming ineffective assistance of appellate counsel. Id.  This petition was denied as meritless, with the PCRA court explaining that Coleman's petition was untimely because the case Coleman relied upon in his petition was decided on June 9, 2003 and the PCRA gave Coleman only 60 days to file a PCRA petition after the court recognized a new retroactive constitutional right.  Id. citing Commonwealth v. Coleman, Cp-51-CR-509923-1991 (Nov. 8, 2007).

Coleman filed his federal habeas petition in March of 2014 averring that he was denied due process based upon the evidence introduced against his co-defendants.  He asserts that this constitutional violation was compounded because the joinder, to which he timely objected, was permitted based on the PCOA charge which the Pennsylvania Supreme Court later held did not apply to defendants in Coleman's position. R & R at 3.  Judge Rice recommended that Coleman's claims be denied with prejudice as untimely under AEDPA.  Id. at 12.  Coleman then timely filed his objections to the R & R.

**IV.    Discussion**

Coleman objects to the R & R, asserting that Judge Rice erred when he failed to excuse Coleman's untimely filing under the FMJE when Judge Rice held that Coleman could not establish equitable tolling and he recommended that we deny Coleman's request for an

evidentiary hearing, and that we decline to issue a certificate of appealability. We address these issues in turn.[3]

### A.    The FMJE's Applicability to Coleman's Untimely Petition

Coleman first objects to the R & R by stating that Judge Rice erred when he stated that the "actual innocence" standard of the FMJE did not apply to Coleman and by ignoring Coleman's argument that "the FMJE applies to rare and extraordinary circumstances beyond actual innocence." Obj. at 4. We agree with Judge Rice and find that the FMJE does not apply to Coleman's petition.

The Supreme Court has stated that procedural default does not bar a claim from review on habeas if the petitioner "demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). The FMJE is "grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." Herrera v. Collins, 506 U.S. 390, 404 (1998). The FMJE "seeks to balance the societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case." Schlup v. Delo, 513 U.S. 298, 324 (1995). The FMJE has also survived the passage of AEDPA, see Calderon v. Thompson, 523 U.S. 538, 559-60 (1998), with the Court recently noting that "[s]ensitivity to the injustice of incarcerating an innocent individual should not abate when the impediment is AEDPA's statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1932 (2013). This exception to AEDPA has only been explicitly applied to cases of

---

[3] AEDPA imposes a one year-statute of limitations period of applications for writs of habeas corpus, and the limitations period begins on the date when the petitioner's judgment of sentence became final "by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244 (d)(1)A). Coleman admits that he filed his habeas petition well outside this period. But he asserts that his claim should still be considered timely under both the FMJE and the principles of equitable tolling.

actual innocence, which "serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar…or…expiration of the statute of limitations." Id. at 1928. A petitioner proves actual innocence when "it is more likely than not that no reasonable juror would have convicted" the petitioner in light of new evidence. Schlup, 513 U.S. at 327. The Supreme Court has, in muddled fashion, suggested that a change in the law can be considered "new evidence" for a showing of actual innocence. See Bousely v. United States, 523 U.S. 614, 622-24 (1998); see also United States v. Schwartz, 925 F. Supp. 2d 663, 693 (E.D. Pa. 2013) ("Schwartz's 'actual innocence' claim fails to mention the existence of any new evidence or legal authority."). The actual innocence standard, as the Court has reiterated, is "demanding and permits review only in the 'extraordinary' case." House v. Bell, 547 U.S. 518, 538 (2006).

Coleman argues that the "new evidence" in this case is the fact that the Supreme Court of Pennsylvania ruled in Besch that PCOA charges like the ones brought against Coleman were illegal. Petitioner's Reply to Def.'s Response ("Pet. Reply) at 5. We find that applying Besch does not constitute new evidence that would make it more likely than not that no reasonable juror would have convicted Coleman. In Besch, the Pennsylvania Supreme Court ruled that the PCOA "does not encompass the prosecution of a wholly illegitimate enterprise." 674 A.2d at 655. Therefore, had Coleman's case occurred after Besch, he could not have been joined with his co-defendants in a trial due to the PCOA charge. Coleman avers that, because of the PCOA charge and his joinder with the other defendants, his trial was "awash in unrelated 'other crimes' evidence which overwhelmed meager evidence of petitioner's involvement in the Tobin's Inn Shooting." Petition at 5.

We do not take lightly Coleman's assertion that what he describes as a "circus-like" trial caused him due process violations that may meet the stringent requirements of the FMJE. But

Coleman's argument is fatally flawed since the jury that convicted him of first degree murder acquitted him of the very PCOA charge that he alleges violated his constitutional rights. Coleman asserts in his petition that at the end of his trial, "anyone even marginally connected to Haynes…could not receive a fair assessment of the evidence against him." Id.  This statement contradicts the evidence of record and Coleman's own petition.  A jury acquitted Coleman of the PCOA charge despite testimony during his trial implicating him as participating in Haynes's drug gang. Id. at 16-22.  This same jury found the testimony regarding his involvement in the Tobin's Inn Shooting credible enough to convict Coleman of first degree murder.

As rehearsed, Coleman essentially argues that it is likely that no reasonable juror could have found him guilty of murder had he not been joined with his co-defendants through the PCOA charge, even though the jury which convicted him of murder found that he was not guilty of the PCOA charge.  To accept this logic one must believe that the jury in Coleman's case was prejudiced by the "other crimes" evidence when considering Coleman's involvement in the Tobin's Inn Shooting, but was not prejudiced by this evidence when considering the PCOA charge -- even though the "other crimes" evidence is more closely related to the PCOA charge against Coleman than to the murder charge.  We cannot accept the argument that the trial joinder due to the PCOA charge against Coleman was the cause of his murder conviction.  Coleman therefore does not satisfy the actual innocence standard of the FMJE.

Coleman further avers that the FMJE applies to extraordinary and rare circumstances aside from actual innocence.  Pet. Reply at 9.  He asserts that the Supreme Court has suggested that the FMJE is broader than actual innocence by citing House, where the Court wrote that the actual innocence standard in Schlup was "a specific rule to implement this general principle." House, 547 U.S. at 536. Coleman also cites Justice Stevens's concurrence in Sawyer v. Whitley,

505 U.S. 333, 361 (1992), which noted that "[w]hile the conviction of an innocent person may be the archetypal case of a manifest miscarriage of justice, it is not the only case.  There is no reason why 'actual innocence' must be both an animating <u>and the limiting</u> principle…" (emphasis added).

We are sympathetic to the argument that "actual innocence" is not the only type of situation covered by the FMJE, though neither the Supreme Court nor our Court of Appeals have explicitly endorsed this position.  And, as we wrote earlier, we do not take lightly the fact that Coleman was convicted of first degree murder after a trial where most of the evidence presented did not pertain to him, but instead focused on the acts of his co-defendants.  But we cannot overlook the fact that the jury in Coleman's case, after hearing the evidence against him and the other defendants, found Coleman guilty of murder and <u>not guilty</u> of the PCOA charge that led to the joinder with his co-defendants.  This demonstrates to us that the jury worked to parse the evidence of Coleman's involvement in the murder by virtue of his alleged involvement with the drug ring, and we are not in the business of overturning a jury verdict that appears to be the result of careful thought and consideration twenty-years after the fact.  The standard for obtaining an FMJE to a procedural default is extraordinarily demanding, and while we have misgivings about the trial in which Coleman was convicted, we do not think his case falls under that demanding exception.  We will therefore overrule Coleman's objection to the R & R with regard to his contention that his untimely petition should be excused by the FMJE.

### B.     <u>Equitable Tolling</u>

Coleman next objects to Judge Rice's R & R by arguing that his claim qualifies for equitable tolling.  He avers that he is eligible for equitable tolling because he has pursued his rights diligently and the Pennsylvania Supreme Court ruling in <u>Besch</u> -- which held that PCOA

charges, such as the one that led to Coleman's joinder at trial with his four co-defendants, were unconstitutional -- coupled with ineffective assistance of counsel, constitute "extraordinary circumstances" that prevented timely filing.  See Obj. at 14-18.  We find that Coleman does not qualify for equitable tolling.

The Supreme Court has held that a habeas petitioner can only invoke the doctrine of equitable tolling by showing that (1) he has been pursuing his rights diligently, and (2) extraordinary circumstances stood in his way that prevented timely filing.  Holland v. Florida, 560 U.S. 631, 649 (2010).  Our Court of Appeals has held that equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum."  Jones v. Morton, 195 F.3d 153, 159 (3d Cir. 1999) (quoting United States v. Midgley, 142 F.3d 174, 179 (3d Cir. 1998)).

Coleman's actions do not rise to the level of due diligence required for equitable tolling to apply.  Between 1994 -- when his attorney allegedly agreed to file a petition for review with the Pennsylvania Supreme Court -- and 2000 -- when Coleman wrote the Court for an update on his petition -- Coleman took no steps to preserve or pursue his appellate rights.  See Pet. Reply at 14-15.  Moreover, it took him an additional one to two years from this time to so much as file a PCRA petition, something he finally did in 2002.  Id. at 16.[4]  Even more problematic is Coleman's inaction on a potential federal habeas claim, as he waited nearly two decades after AEDPA's statute of limitations expired to file this petition.[5]  This contrasts with petitioners who have been granted equitable tolling, such as Albert Holland, who wrote his attorney many times,

---

[4] Coleman claims that he was attempting to raise funds to hire an attorney since he had been unhappy with his court appointed counsel. Pet. Reply at 16-18.  There was nothing, however, stopping him from filing a pro se petition right away.

[5] In addition, he waited seven years after his final unsuccessful PCRA petition to file this federal habeas action.

contacted state courts, clerks, and the Florida State Bar Association, and filed a <u>pro se</u> federal <u>habeas</u> petition the same day he learned that his AEDPA clock had expired.  <u>Holland</u>, 560 U.S. at 653.  While we have doubts as to whether the ineffectiveness assistance of counsel claim Coleman alleges constituted extraordinary circumstances that prevented his timely filing, we need not reach a conclusion on this issue as we find he has not diligently pursued his rights.  We will therefore overrule this objection to the R & R and find that equitable tolling does not apply to Coleman's case.

### C.    **Request for an Evidentiary Hearing**

Coleman next objects to Judge Rice's recommendation that we deny petitioner's request for an evidentiary hearing, but we will also overrule this objection.  We have the discretion to order an evidentiary hearing where the facts underlying the petitioner's claim arguably have not been fully developed and where such a hearing would be meaningful.  <u>Campbell v. Vaughn</u>, 209 F.3d 280, 287 (3d Cir. 2000).  A petitioner must show that there is new evidence that can help his cause or otherwise explain how his "claim would be advanced by an evidentiary hearing." <u>Id.</u> (internal citations omitted).  As we have discussed at length above, Coleman's petition is untimely.  He has simply not demonstrated that he had diligently pursued his rights over the past twenty years in a way that would excuse his failure to timely file his petition.  Moreover, he has had many opportunities to provide compelling explanations for his defaults and yet he still cannot account for large gaps of time in between tangible points of action.

In his objections to Judge Rice's R & R, Coleman avers that an evidentiary hearing is warranted to establish the "extraordinary circumstances" element of equitable tolling, stating that he can have his appellate lawyer and family members testify to establish attorney abandonment. R & R at 8.  But we have already concluded that he did not meet the first element required for

equitable tolling -- that he diligently pursued his rights -- and therefore have no reason to convene an evidentiary hearing to determine whether Coleman has satisfied the second element. We will therefore overrule Coleman's objection to the R & R's finding that an evidentiary hearing is unnecessary.

### D.      Certificate of Appealability

Coleman finally requests that we issue a certificate of appealability.  We will sustain this and grant a certificate of appealability on the sole issue of whether the FMJE applies to this matter and therefore excuses Coleman's untimely filing of his petition.  A petitioner who seeks to appeal a final order of a district court must obtain a COA for each claim he wishes to present to the Court of Appeals, see 28 U.S.C. § 2253 and Fed. R. App. P. 22(b), and the petitioner must make "a substantial showing of the denial of a constitutional right" to obtain a COA.  28 U.S.C. § 2253(c)(2).  The Supreme Court has held that a certificate of appealability should be granted only when jurists of reason could debate procedural or substantive dispositions of a petitioner's claims.  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  It further  summarized this standard in Miller-El v. Cockrell, 537 U.S. 322, 336 (2003), stating that a petitioner must show that "reasonable jurists could debate whether…the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." (quoting Barefoot v. Estelle, 463 U.S. 880 (1983)) (internal citations omitted).  A petitioner need not, however, demonstrate that the appeal will succeed.  Id.

We have found that the FMJE is inapplicable to Coleman's petition.  We came to this conclusion after determining that Coleman had not met Schlup's standard for actual innocence, and that his situation did not fall under any "extraordinary and rare" circumstance where the FMJE may apply absent a showing of actual innocence.  We believe, however, that reasonable

jurists could disagree as to whether a conviction arising from a twenty-eight day trial where seventy-six witnesses were called and only one testified as to Coleman's participation in the Tobin's Inn Shooting can be considered a fundamental miscarriage of justice.  We further believe that the issues presented by Coleman deserve encouragement to proceed further, as Coleman has raised important questions about the outer limits of the FMJE.  We will therefore issue a COA limited by the question of whether the FMJE applies to Coleman's petition and excuses his untimely petition.

**V.**     **Conclusion**

We find that Coleman's objections to the substantive findings of Judge Rice's R & R lack merit.  We will therefore overrule Coleman's objections as to the applicability of the FMJE and equitable tolling and his request for an evidentiary hearing.  We will, however, grant Coleman's request to issue a COA.  We will therefore approve and adopt-in-part Judge Rice's R & R, dismiss Coleman's petition with prejudice and without an evidentiary hearing, and issue a certificate of appealability on the limited question of whether the FMJE applies and, if so, excuses Coleman's otherwise untimely petition.

BY THE COURT:

 /s/ Stewart Dalzell, J.
Stewart Dalzell, J.